MARIE K. DONNELLY, APPELLANT, V. SOVEREIGN CAMP, WOODMEN OF THE WORLD, APPELLEE.

FILED JANUARY 15, 1924. No. 23442.

1. **Contracts:** FORFEITURE. Forfeitures are odious in law and are not favored by the courts, and will not be enforced unless the facts which purport to require such drastic action come clearly and plainly within the provisions of the law or of the contract, as the case may be.

2. **Insurance:** POLICY: CONSTRUCTION. A certificate of life insurance, issued by a fraternal beneficiary association, and the laws of the association under which it was issued, together with the laws of the state which were applicable thereto, should, from a fair construction of all the language used, be so construed as to make effective, if possible, the purpose for which the dues were paid and the certificate of insurance was issued.

3. ———: CONSTITUTION AND BY-LAWS: CONSTRUCTION. The rule is that the constitution or a by-law of an order that purports to be a beneficiary association will be strictly construed against it where, under its constitution or a by-law, there appears an attempt to work a forfeiture. *Meyer v. Supreme Lodge K. of P.*, 104 Neb. 505, on rehearing, 104 Neb. 511.

4. ———: CHANGE OF RATES: NOTICE. Where a change or amendment is made in the constitution, laws or by-laws of any fraternal beneficiary society making, fixing, changing or raising the schedule of rates of insurance, or periodical contribution, by members, for the payment of benefit or death claims, such pro-

posed change shall not be effective until 90 days from and after
due notice thereof shall have been given by the proper officer
or officers of the governing body of such fraternal beneficiary
society through its official paper, and also "by notice thereof to
the local lodges or societies by mail to the proper officers of such
local orders." Comp. St. 1922, sec. 7903.

5. ———: DIRECTION OF VERDICT. The evidence examined, dis-
cussed in the opinion, and *held*, that the court erred in directing
a verdict for the defendant fraternal beneficiary association.

APPEAL from the district court for Douglas county:
CHARLES LESLIE, JUDGE. *Reversed.*

*Will H. Thompson* and *Byron G. Burbank,* for appellant.

*Gaines, Van Orsdel & Gaines* and *D. E. Bradshaw, contra.*

Heard before MORRISSEY, C. J., DAY, GOOD and DEAN, JJ.,
REDICK and SHEPHERD, District Judges.

DEAN, J.
This is the second appearance in this court of this case.
Plaintiff, who is the daughter of the insured, seeks to
recover $2,000 on a fraternal beneficiary certificate of life
insurance issued by defendant to her father, H. W. Sawyer.
The certificate also provides for the payment of $100 for
a monument. Mr. Sawyer died July 26, 1918. When the
evidence was submitted the court sustained defendant's mo-
tion for judgment and dismissed the action. Plaintiff
appealed.

At the former trial plaintiff recovered judgment for the
full amount named in the certificate. Defendant appealed
from that judgment and it was reversed and the cause re-
manded for a new trial. The case was again tried and is
now here for review on plaintiff's appeal. The issues in-
volved in the former case need not be discussed here. They
are fully detailed in the former opinion. *Sawyer v.
Sovereign Camp, W. O. W.,* 105 Neb. 395.

Before the case was reached for trial the second time, the
plaintiff and beneficiary therein, Mrs. Cathryn Sawyer,

widow of the insured, died. The action was subsequently revived in the name of her daughter, who is her sole heir and is now plaintiff.

The material facts upon which our decision is based are substantially these: A fraternal beneficiary certificate was first issued to the insured November 23, 1899. He was then 22 years of age. November 13, 1902, a second or renewal policy was issued wherein his wife, Cathryn Sawyer, was named as beneficiary. That appears to be the sole change in the renewal policy. When the insured died he was 41 and for 19 years he had continuously paid dues to the defendant association. For seven months before his death he was a switchman in the employ of the Union Pacific railroad and worked at its yards at Omaha, and, while acting in that capacity, was swept to the ground by an overhead wire from the top of a moving freight car. He never regained consciousness. About two hours after the accident he died.

Briefly the defense is that the insured violated an amended law of the defendant association in that shortly before he died he changed from a nonhazardous occupation to that of a railroad switchman, which defendant's amended 1917 laws purport to rate as hazardous. It is not denied that such change was made without notifying defendant, nor is it denied that the insured did not pay the additional dues of 30 cents a month on each $1,000, as the amended section of the law purports to provide, for the seven months preceding his death, namely, a total of $4.20, in addition to the regular dues which were paid up to and including the month of his death. Defendant contends that the insured, under his contract of insurance, came within the provision of the 1917 amendment, and that, because of his alleged failure to comply with its requirements in the respects noted, the defendant association is not liable under the beneficiary certificate, and on that ground defendant refused payment. The plea is, in brief, that the fraternal beneficiary certificate in suit has been forfeited.

Defendant also points out and stresses the fact that plain-

tiff's application for admission to the order, under date of October 12, 1899, so far as applicable here, has this provision printed on the back of the application: "Persons engaged in the following classes of business or employment, to wit: * * * conductors and brakemen on railway freight trains, railway baggagemen, expressmen, switchmen, hostlers and other similar railway and steamship employees, * * * may be admitted to membership, if accepted by the sovereign physician, but their certificates shall not exceed two thousand dollars ($2,000) each and their rate of assessment shall be 30c on $1,000, in addition to the regular rate, while engaged in either of said hazardous occupations; the same emergency fund dues are paid as in the ordinary occupations."

The above indorsement on the application which relates to "hazardous occupations" is written in the present tense and evidently refers to a person who, at the time the application was made, was actually engaged in a hazardous occupation. There is nothing in the language there used, nor has our attention been directed to any law of defendant, then in force, to indicate that persons who at that time were, or thereafter might become, engaged in the occupations there denominated "hazardous" should give notice of such employment, nor was there any provision for automatic forfeiture therefor. And it is to be noted that it was in the 1917 amendment that the requirements for notice and for forfeiture first appeared in defendant's laws.

Plaintiff argues that the forfeiture clause was not binding upon the insured at any time. The claim for exemption from forfeiture is based in part on the fact that the insured became a member in 1899, and that subdivisions c, d, and e of section 56 of the laws of the order, pursuant to the terms therein expressed, fairly brought him within a nonforfeitable class. The subdivisions in question were adopted some time prior to 1917, but the date of adoption does not appear in the record. They provide:

"(c) Every applicant admitted to membership prior to September 1, 1901 shall pay the same rate as pre-

scribed for members admitted on or after September 1, 1901: Provided, they may elect to continue paying the same assessment they are now paying, and vesting in the Sovereign Camp, Woodmen of the World, authority to deduct from the amount to be paid their beneficiaries such deficiency as a compilation may show exists between the amount paid by them and the amount paid by the members entering the society on or after September 1, 1901. The assessments collected according to the foregoing tables of rates (of defendant society) shall be known as the Sovereign Camp fund. (d) Provided, that failure to pay the advance rate on or before October 1, 1915, by any member, shall be construed as an acceptance of the option for a lien to be entered against his certificate. (e) In event the insured has not paid his annual assessment in advance but has paid instalments of his assessments and dues up to and including the month of his death, the Sovereign Camp shall deduct from the amount of his certificate the balance due for the instalments to cover the entire annual assessment."

Fairly construed and reasonably interpreted, the foregoing subdivisions c, d, and e of section 56, when considered together, apply to any fraternal beneficiary certificate issued by defendant prior to September 1, 1901, and this would of course include the certificate sued on. And there is nothing to show, nor does defendant contend in its brief, that the subdivisions in question were ever repealed. It seems clear that one whose membership dated from 1899, as in the present case, was in a class to whom the drastic provisions for forfeiture contained in the 1917 amendment, in respect of change of employment and the like, had no application, and that the beneficiary of such member would be entitled to the full amount named in the beneficiary insurance certificate less the sum of 30 cents a month for each $1,000 of insurance for the time that the insured was engaged in the hazardous occupation, and that such sum would constitute a lien in favor of the defendant association to be deducted from the fund represented by the face of the insurance certificate.

So interpreted the foregoing subdivisions, and particularly subdivision (e), exemplify real fraternalism. But to give meaning to defendant's argument would make of no effect a provision of its own law and would make a mockery of much that is vital in the expression "fraternity." An accepted definition of "fraternity" follows: "That mutual interest and affection which is characteristic of the fraternal relation; brotherly regard and sympathy for others." Century Dictionary. And "fraternity" is the fundamental expression of all mutual, fraternal insurance associations.

For a further plea against forfeiture, plaintiff argues that the publication of the amended laws in defendant's official paper does not comply with the mandatory provisions of the statute. So far as applicable here, the act in question which applies solely to fraternal beneficiary associations, after providing that a representative form of government and the like shall be maintained, reads:

"Provided, however, whenever any proposed change or amendment in the constitution or by-laws of any such society, making, fixing, changing or raising the schedule of rates of insurance, or periodical contribution, by members, for the payment of benefit or death claims, or the creation of a reserve in any beneficial society authorized to transact business in this state shall be proposed or promulgated by the governing body of such society, such proposed change shall not be effective until 90 days from and after due notice of such change shall have been given by the proper officer or officers of such governing body to the members of such society through its official paper, and by notice thereof to the local lodges or societies by mail to the proper officers of such local orders." Comp. St. 1922, sec. 7903.

The "Sovereign Visitor" is the official paper of the defendant association. It is printed once a month. A copy of the October, 1917, number is in the record and contains five or six columns of printed matter which pertain to the defendant association. The closing section, which refers to the printed matter, follows: "Section 165. This constitution and laws, by-laws and rules of order, as amended and

adopted at this 1917 session of the Sovereign Camp, shall be in full force and effect on and after October 1, 1917, except as herein provided." It is not argued that the words "except as herein provided" are applicable to the present case. But section 165 is a manifest misdescription of the matter which goes before. Obviously it is not the "constitution and laws, by-laws and rules of order" of the defendant association, but is nothing more than the purported "amendments." Section 165, if intended as a certificate, is a misnomer. Evidently it means nothing. Clearly it is a loose expression and does not relate to that which precedes it.

The publication of that which purports to be the "amendments" does not comply with the plain provisions of the statute. How could the amended laws become effective October 1, 1917, when they did not appear in the official publication until the October, 1917, issue, which is printed sometime in October, under a law which provides that they "shall not be effective" until 90 days after such publication? But in defiance of section 7903, the changes in the by-laws, according to the terms of the printed publication, are proclaimed to "be effective" even before they appeared in the official publication, instead of 90 days thereafter. The bald recital that the amended laws "shall be in full force and effect on and after October 1, 1917," is an idle proclamation. The argument that the amendments became effective 90 days after they first appeared in print is not tenable, in view of the legislation in this state, and of the decisions affecting fraternal beneficiary insurance associations, all of which require strict compliance with the statute, and more particularly when a forfeiture is threatened or is about to be imposed. Plaintiff's argument that "section 7927 is analogous to section 7903" in its requirement in respect of verification by signature is not without force. *Tomson v. Iowa Traveling Men's Ass'n*, 88 Neb. 399, and cases cited.

The name of no officer of the governing body appears in connection with the publication. Whether the matter which purports to be "amendments" was published by

authority of any officer or officers of the governing body does not appear. In extenuation of this apparent default defendant argues:

"It will be observed that the above section (7903) applies only when it is proposed by an amendment to change or raise the schedule of rates, and there is not the slightest proof in this record, nor is such the fact, that the laws adopted in July, 1917, changed the schedule, the rates or assessments in the slightest."

Defendant's argument is not persuasive. Section 7903 refers to "any proposed change or amendment, * * * making, fixing, changing or raising the schedule of rates of insurance, or periodical contribution, by members." It seems that to adopt an amendment providing for the imposition of an additional assessment of 30 cents on each $1,000 of insurance materially "changed the schedule" as affecting the insured. And to impose a forfeiture of a beneficiary certificate on account of the nonpayment of such additional assessment also "changed the schedule" as affecting the insured and raised "the schedule of rates." But altogether aside from this, can it be said that the additional thirty-cent monthly assessment was not included in the term "periodical contribution" as used in the act and preceded by the disjunctive " or ?" Surely publication as contemplated by section 7903 is mandatory.

So far as the foregoing statutory requirements in respect of publication are involved here, it plainly appears that they were not observed by defendant. It appears to us that, in view of the statutory language, there should be a certificate over the hand of the proper officer or officers of the governing body of the defendant society authenticating material matter in its published laws which, if not complied with by a member, might work a forfeiture of his insurance certificate. The burden of proof is upon defendant to establish every material fact which tends to substantiate its claim for a forfeiture. Where a fraternal insurance association seeks to work a forfeiture of a beneficiary insurance certificate issued to one of its members, the law should first

be strictly complied with, because it is fundamental that a presumption will never be indulged in favor of a forfeiture.

Another feature must be noticed in respect of section 7903. Notwithstanding the mandatory requirements of the statute, there is an entire absence of evidence which tends to show that any of the officers of the governing body or any other person, sent the required statutory notice of the amendments "to the local lodges or societies by mail to the proper officers of such local orders." In respect of sending out printed matter generally, such as notices and the like, the sovereign clerk testified: "I have the direction of sending all the papers out and all other matter of that kind, and it is under my supervision, and I have a man, under my supervision, that sends it out." "Q. Now, is there a direction given by you to your office force there with reference to mailing these amendments to the officers of the local lodges? A. Certainly, they would not mail it if they did not get directions. Q. What is that? A. I say certainly. Q. But what directions would you give them? A. I just simply tell them that they are to mail them out and who they are to mail them to. Q. And that is to people in your employ? A. Yes. Q. Now, whether they deposit them in the mail or not, you don't know of your own personal knowledge? A. Of course not." Elsewhere in the record it appears that the sovereign clerk gave the name of an employee who it was said had personal charge of the mailing of the publications, notices to the local lodges, and the like, but his evidence does not appear in the record. From the record it appears that the amendments in question have never become "effective" in the statutory sense.

Forfeitures are odious in law and are not favored by the courts, and will not be enforced unless the facts which purport to require such drastic action come clearly and plainly within the provisions of the law or of the contract, as the case may be. A certificate of life insurance, issued by a fraternal beneficiary association, and the laws of the association under which it was issued, together with the laws of

the state which are applicable thereto, should, from a fair construction of all the language used, be so construed as to make effective, if possible, the purpose for which the dues were paid and the certificate of insurance was issued. The rule is that the constitution or a by-law of an order that purports to be a beneficiary association will be strictly construed against it where, under its constitution or a by-law, there appears an attempt to work a forfeiture. *Meyer v. Supreme Lodge, K. of P.,* 104 Neb. 505, on rehearing, 104 Neb. 511.

The questions upon which our decision rests in this appeal were not presented nor decided in the former appeal. The former case was, of course, as therein observed, decided upon the record as it then stood. *Sawyer v. Sovereign Camp, W. O. W.,* 105 Neb. 395.

From a review of the facts which are herein discussed, we conclude that the court erred in directing a verdict in favor of defendant. The judgment is therefore reversed and the cause remanded for further proceedings in accordance with law.

REVERSED.

REDICK, District Judge.

I concur on the ground of insufficient publication of the amendment of 1917 and the failure to mail notices thereof to the proper officers of the local lodges.