736 So.2d 529 (1999)
Ex parte Jerold HOPPER and Renaa Hopper.
(Re Jerold Hopper and Renaa Hopper v. Woodmen of the World Life Insurance Society et al.)
No. 1970259.
Supreme Court of Alabama.
January 15, 1999.
Dissenting Opinion on Overruling of Rehearing May 28, 1999.
*530 Tom Dutton, Jeffrey C. Kirby, and Chris T. Hellums of Pittman, Hooks, Dutton & Hollis, P.C., Birmingham, for petitioners.
Finis E. St. John IV of St. John & St. John, Cullman; and Thomas T. Gallion III of Haskell, Slaughter & Gallion, Montgomery, for respondents.
Jere L. Beasley, W. Daniel "Dee" Miles III, and Joseph H. "Jay" Aughtman of Beasley, Wilson, Allen, Crow & Methvin, P.C., Montgomery, for amicus curiae Alabama Trial Lawyers Ass'n, in support of the petitioners.
KENNEDY, Justice.
Jerold and Renaa Hopper petition this Court for a writ of mandamus directing the Cullman Circuit Court to vacate its order compelling them to arbitrate their claims against the Woodmen of the World Life Insurance Society (the "Society"). We grant the petition.
On January 10, 1997, Jerold and Renaa Hopper sued the Society and Douglas King, its agent, alleging fraud and deceit. In their complaint, the Hoppers state that King induced them to cash in their three existing insurance policies with the Society and to replace them with a new policy, as part of a "special program." They allege that King represented that the new policy would provide them with additional insurance coverage while attaining a greater long-term cash value at a faster rate.[1] The Hoppers claim that these representations were untrue and that the Society and King converted the cash value of their original policies for their own purposes.
On May 15, 1997, the Society filed a motion to compel the Hoppers to submit their claims for resolution under the Society's newly adopted alternative dispute resolution ("ADR") procedure. The Society's ADR procedure includes binding arbitration as its final step. On May 16, 1997, the trial court granted the Society's motion. The Hoppers' subsequent motion for a reconsideration of that ruling was denied on June 4, 1997. At that time, a hearing had not been held on the issue of *531 arbitration, and the Society had not yet submitted a copy of the purported ADR agreement or any information concerning its terms or its incorporation into the Hoppers' policy. On June 30, 1997, the Hoppers filed a second motion for reconsideration. The trial court granted the motion and set a hearing on the Society's motion to compel, for October 2, 1997. After the hearing, the trial court again granted the Society's motion to compel the Hoppers to submit to the Society's ADR procedure, including binding arbitration. The Hoppers' final motion for reconsideration was denied on October 28, 1997.
A petition for the writ of mandamus is the appropriate method of challenging a trial court's order compelling arbitration. Ex parte Gates, 675 So.2d 371 (Ala. 1996). The writ of mandamus is an extraordinary remedy, requiring a showing of (1) "a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Id. at 374 (quoting earlier cases).
The evidence indicates that the Society is a Nebraska-based, fraternal-benefit organization and that is governed by a representative body known as the "national convention." In compliance with § 27-34-29(a), Ala.Code 1975, the Society's standard certificate of insurance, which it issued to the Hoppers, provides that the contract between it and its insureds includes not only the certificate itself but the Society's articles of incorporation, its constitution, and its laws. The certificate further states that "[t]he Articles of Incorporation and the Constitution and Laws and any amendments to them are binding on the member and the beneficiary, but will not take away or reduce any of the benefits of [the] certificate."
Relying on this language in the certificate and on § 27-34-29(c), Ala.Code 1975, the Society argues that the Hoppers should be compelled to arbitrate. Section 27-34-29(c) provides:
"Any changes, additions or amendments to the charter or articles of incorporation, constitution or laws duly made or enacted subsequent to the issuance of the certificate shall bind the member and the beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to, and were in force at the time of, the application for membership; except, that no change, addition or amendment shall destroy or diminish benefits which the society contracted to give the member as of the date of issuance."
The Hoppers argue that arbitration should not be compelled because (1) they say they did not enter into a valid arbitration agreement waiving their right to a judicial resolution of their claims, and (2) they say that, even assuming there was a valid waiver, the arbitration policy went into effect after they had commenced their action against the Society and the retroactive application of the arbitration procedure would wrongfully deprive them of protected rights and would violate public policy.

I.
In addressing the Hoppers' contention that they did not voluntarily waive their constitutional right to a judicial resolution of their claims, this Court must determine whether a valid and enforceable arbitration agreement exists between the parties. If we determine that a valid arbitration agreement exists, we must then consider whether the plaintiffs' specific claims are included within the scope of that arbitration agreement. It is clear that the broad language of the Society's ADR procedure encompasses the fraud claims raised by the Hoppers. Less clear, however, is whether the Hoppers effectively agreed to be bound by the ADR procedure, which was adopted as an amendment to a document incorporated into their original insurance contract.
*532 Despite the fact that courts have had before them a large number of cases involving binding arbitration, the threshold issue in such casesthe existence and effectiveness of the agreement to arbitrate has rarely been addressed in much detail. In most cases, the arbitration provision is contained within a contract or within a document attached to or referenced by the contract. Under those circumstances, the issue has been resolved by determining whether the parties signed the document and whether the document forms a valid, enforceable contract under state contractlaw principles. See Ex parte Dickinson, 711 So.2d 984 (Ala.1998). This case, however, presents the question whether an arbitration agreement will be enforced when it is adopted by one of the parties pursuant to a provision in the original contract allowing for unilateral amendments. Neither this Court nor the United States Supreme Court has addressed this issue or tested the effectiveness of an arbitration provision arising under these facts. Although we would normally look to the language of the Federal Arbitration Act, the FAA provides little guidance beyond the requirement that the arbitration agreement be in writing.[2]
Recognizing that an agreement to arbitrate is a civil waiver of a party's rights to a judicial resolution under our State and Federal Constitutions, we hold that the Hoppers did not assent to the arbitration procedure adopted by the Society. See Allstar Homes, Inc. v. Waters, 711 So.2d 924 (Ala.1997).[3] When the Hoppers signed their original contract for insurance, none of the documents mentioned in that original contract contained an arbitration provision. Although the Hoppers' certificate of insurance did incorporate future amendments to the governing laws of the Society, a provision of this kind is not enough to put the Hoppers on notice that by signing their application for insurance they were agreeing to mandatory, binding arbitration. The Hoppers' agreement to allow the Society to make certain unilateral changes to their insurance agreement does not provide the clear and unmistakable evidence required to show that the Hoppers voluntarily waived their constitutional rights to a judicial resolution. See Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972); Prudential Ins. Co. of America v. Lai, 42 F.3d 1299 (9th Cir.1994), cert. denied, 516 U.S. 812, 116 S.Ct. 61, 133 L.Ed.2d 24 (1995) (holding that agreeing to a standard securities form incorporating the NASD Code provisions, which made no specific reference to the fact that those provisions require arbitration, is not a knowing waiver of the right to a judicial resolution).
When a court is addressing the scope of an arbitration provision, it resolves every question in favor of arbitration, but the opposite is true when a court is addressing the threshold issue whether a party has voluntarily waived the right to a judicial resolution by entering into an agreement to arbitrate. See Fuentes v. Shevin, supra, 407 U.S. 67, 92 S.Ct. 1983, *533 32 L.Ed.2d 556; D.H. Overmyer Co. v. Frick Co., supra, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). It is a central tenet of constitutional law that "courts indulge every reasonable presumption against waiver." Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937). "[A] waiver of constitutional rights in any context must, at the very least, be clear." Fuentes, 407 U.S. at 95, 92 S.Ct. 1983.
This Court has consistently recognized the requirement that, in order to be required to arbitrate, the parties must have expressed an intent to arbitrate. In the recent case of Ex parte Beasley, 712 So.2d 338, 341 (Ala.1998), this Court stated that "[a]bsent [the plaintiff's] signature on a document [containing] a valid arbitration clause, we cannot hold that [the plaintiff] agreed to arbitrate her claims against [the defendant]." This case presents a similar situation. The Hoppers were never asked to sign a document containing or referencing an arbitration agreement. In addition, the Hoppers received no notice when the Society adopted the amendment 11 years later. In short, the Hoppers were never given the option of considering whether or not to agree to arbitration. Without this option, we cannot find a valid agreement to arbitrate.

II.
Even assuming that a valid arbitration agreement existed between the Hoppers and the Society, that agreement could not be used to compel the Hoppers to arbitrate, because this action was filed before the arbitration procedure went into effect.
As noted, the Hoppers sued the Society on January 10, 1997. The Society argues that the amendment containing the arbitration provision went into effect on December 31, 1996, when it was adopted by the national convention, and that it was incorporated into the Hoppers' agreement on that date. However, the Hoppers argue that the amendment, and thus the arbitration provision, became effective on January 28, 1997, eighteen days after they had filed their action.
In order to determine when the amendment went into effect, we must look to Nebraska law.[4] Under Nebraska law, an amendment to the governing laws of a fraternal benefit society becomes effective when it is approved by the director of the Nebraska Department of Insurance, not when it is adopted by the society. See Neb.Rev.Stat. § 44-1082(2) (1993). The director approved the amendment at issue in this case on January 28, 1997, and it was on that date that the amendment became effective. See Donnelly v. Sovereign Camp, W.O.W., 111 Neb. 499, 197 N.W. 125 (1924) (requiring strict compliance with Nebraska statutes governing the effectiveness of fraternal-benefit-society amendments). Therefore, as the Hoppers contend, the Society's ADR procedure, including its arbitration procedure, went into effect 18 days after they had filed their action.
As noted above, § 27-34-29(c) states that any amendment to the constitution of a fraternal benefit society is retroactively incorporated into the insurance agreements of the members, just as if it had been in force at the time they applied for insurance. Relying on this statute, the Society cites a string of recent cases from the United States District Court for the Middle District of Alabama that cite § 27-34-29(c) in holding that Society members *534 must submit their claims to binding arbitration. However, all of these cases were filed after the Society's constitutional amendment containing the arbitration provision went into effect. Allowing the retroactive application of the arbitration procedure in this case, where the Hoppers had sued 18 days before the amendment was enacted, would deprive the Hoppers of a vested right and would violate public policy. Fraternal benefit societies are also empowered to shorten, by amendment to their governing rules, the period in which a member can file a claim; under the argument proffered by the Society, a fraternal benefit society would have several methods of unilaterally amending its insurance contracts to dispose of pending lawsuits. However, under Alabama law, Fraternal benefit societies cannot
"[u]nder the reservation of power to amend or alter the laws, or an agreement by the member to comply with laws thereafter enacted, ... bind the member by laws which materially alter or diminish the value of his contract, or impair his vested rights."
Italian Soc. of Mut. Beneficence v. Vacarella, 27 Ala.App. 233, 236, 170 So. 223, 226 (1936) (emphasis added).
Accordingly, the Hoppers have demonstrated a clear legal right to have the trial court vacate its order compelling arbitration.
WRIT GRANTED.
ALMON and SHORES, JJ., concur.
COOK and LYONS, JJ., concur in Part II.
HOUSTON, J., concurs in the result.
HOOPER, C.J., and MADDOX and SEE, JJ., dissent.
COOK, Justice (concurring in Part II).
I agree with the conclusion of Part II of the main opinion, that the arbitration procedure adopted by the amendment cannot be used to compel arbitration in this case because the action has been filed before the amendment became effective. Because Part II of the main opinion would dispose of the issue presented to this court, I express no opinion regarding Part I.
LYONS, J., concurs.
HOOPER, Chief Justice (dissenting).
I must respectfully dissent.
The main opinion treats an arbitration clause differently from other contract clauses. The arbitration agreement incorporated into the Society's constitution is an amendment provision previously agreed to by the Hoppers when they agreed to be bound by the Society's constitution and by all amendments to that constitution. The federal courts in Alabama have already spoken on the enforceability of a private organization's amendment to its constitution to provide for arbitration. The main opinion in this case directly conflicts with the recent decisions of federal courts in this state involving the identical issue, similar facts, and the same private organization. See Woodmen of the World Life Ins. Soc. v. Johnson, 23 F.Supp.2d 1344 (S.D.Ala.1998), and Clayton v. Woodmen of the World Life Ins. Soc., 981 F.Supp. 1447 (M.D.Ala.1997).
The Hoppers' insurance policy contains the insurance certificate, as well as the Society's articles of incorporation and its constitution and laws. When the Hoppers joined the Society and purchased the policy, they agreed to be bound by all of these documents. The certificate states that "[t]he Articles of Incorporation and the Constitution and Laws and any amendments to them are binding on the member and the beneficiary, but will not take away or reduce any of the benefits of [the] certificate." The arbitration provision was adopted by an amendment of the kind that the Hoppers agreed to be bound by when they joined the Society and purchased the policy. The Hoppers did not expressly assent to the particular arbitration agreement *535 at issue; but they assented to the terms of the original policy, which, at the time the Hoppers entered into the agreement with the Society, included a provision allowing for future amendments to the constitution. The arbitration agreement is an amendment to the Society's constitution and is, therefore, enforceable.
Section 27-34-29(c), Ala.Code 1975, provides:
"(c) Any changes, additions or amendments to the charter or articles of incorporation, constitution or laws duly made or enacted subsequent to the issuance of the certificate shall bind the member and the beneficiaries and shall govern and control the agreement in all respects the same as though such changes, additions or amendments had been made prior to, and were in force at the time of, the application for membership; except, that no change, addition or amendment shall destroy or diminish benefits which the society contracted to give the member as of the date of issuance."
This Code provision makes the amendment to the constitution binding on the Hoppers just as if it had been incorporated into the constitution before they applied for and received their policy. Therefore, the arbitration agreement applies to the resolution of disputes concerning the Society's insurance policies, from the point at which it became binding on its members.
The main opinion also states that the arbitration clause is not binding on the Hoppers because they had filed their case before the amendment was approved by the director of the Nebraska Department of Insurance. According to the affidavit submitted by Timothy J. Hall, director of the Nebraska Department of Insurance, the Society's amendment regarding arbitration went into effect on December 31, 1996, not January 28, 1997. Mr. Hall's affidavit reads as follows:
"d. In addition, the certification received from the Secretary of the Society, indicates that the amendments were adopted by more than a two-thirds vote of all members constituting the National Convention of the Society, exclusive of the members of the Board of Directors and further stating the amendments became in full force and effect immediately upon the results being declared by the Society's President, John G. Bookout, on December 31, 1996.

"e. The Department approved those amendments on January 28, 1997, pursuant to Neb.Rev.Stat., § 44-1082.
"f. These amendments became effective and binding on members by their terms, on December 31, 1996."
(Emphasis added.) According to this affidavit, the amendments became effective as to the members of the Society on December 31, 1996. The relevant Nebraska statute, on which the main opinion places so much emphasis, states: "(2) No amendment to the laws of any domestic society shall take effect unless approved by the Director of Insurance who shall approve such amendment if he or she finds that it has been duly adopted...." Neb.Rev. Stat. § 44-1082(2). Nothing in the statute states that the amendment takes effect only when the director approves it, as the main opinion suggests. In fact, according to the affidavit submitted by the director of the Nebraska Department of Insurance, the director approved this amendment on January 28, 1997, and in that approval determined that the approved amendments took effect and became binding on the members on December 31, 1996. The Hoppers sued on January 10, 1997. Thus, the Hoppers filed their action 10 days after the amendments had become binding on the Society's members. The amendment regarding arbitration is, therefore, a part of the contract between the Hoppers and the Society.
The Federal Arbitration Act, as interpreted by the federal courts, governs Alabama's approach to arbitration clauses. The United States District Courts for the Southern and Middle Districts of Alabama have issued opinions on this very point in *536 cases involving Woodmen of the World Life Insurance Society and this particular amendment to the Society's constitution. The United States District Court for the Southern District accepted the Society's contention that the Society's insureds had assented to any amendments to the constitution of the Society and, therefore, that they are now bound by the arbitration amendment. That court wrote:
"Defendants do not dispute that they signed the applications for insurance at issue and are members of Woodmen's fraternal benefit society. As such, defendants agreed to be bound by the constitution and bylaws of Woodmen's fraternal benefit society and amendments thereto, including the arbitration agreement.... [Woodmen] is governed by state law which expressly permits the amendment at issue in this litigation."
Woodmen of the World Life Ins. Soc. v. Johnson, supra, 23 F.Supp.2d at 1344. The United States District Court for the Middle District of Alabama also wrote regarding this same issue, in Clayton v. Woodmen of the World Life Ins. Soc., supra, 981 F.Supp. at 1449:
"[A]mendments to a fraternal benefit society's constitution and laws become a part of the agreement between the society and its members. Therefore, because Woodmen is a fraternal benefit society, the amendments to the constitution and laws, including the arbitration provision, are incorporated into the contract between Clayton and Woodmen."
Both the Johnson case and the Clayton case involved disputes as to the applicability of an arbitration provision that was part of an amendment to the Society's constitution. Because the insureds had not specifically agreed to the arbitration provision, they argued that the agreement was not enforceable with respect to their disputes with the Society. The Hoppers make the very same argument. Both federal courts resolved the issue in favor of the Society. I would too.
When the Hoppers agreed to be members of the Society and purchased their policy, they also agreed to be bound by the Society's constitution and the amendments made to that constitution. The arbitration procedure was adopted by a valid amendment and, therefore, it applies to the Hoppers' claims against the Society.
I would deny the petition for the writ of mandamus.
MADDOX, J., concurs.

On Application for Rehearing
PER CURIAM.
APPLICATION OVERRULED; NO OPINION.
HOUSTON, KENNEDY, COOK, LYONS, and JOHNSTONE, JJ., concur.
HOOPER, C.J., and MADDOX, SEE, and BROWN, JJ., dissent.
MADDOX, Justice (dissenting).
I respectfully dissent. I dissented on original submission, joining a dissent written by Chief Justice Hooper. I continue to agree with the reasoning contained in the Chief Justice's dissent on original submission, and, accordingly, I dissent from the order overruling the application for rehearing.
In addition, I dissent because I believe this Court should have granted the parties' joint motion to dismiss this appeal, which motion I have now determined was filed before this Court released its original opinion in this case. In Spence v. Baldwin County Savings & Loan Ass'n, 533 So.2d 192, 192 (Ala.1988), I concurred specially in "summarily affirming the judgment, but only because the parties filed in this Court the following stipulation":
"`It is hereby stipulated and agreed by and between the undersigned attorneys for the respective parties hereto that the appeal of judgment granted March 31, 1987 in the amount of $ 177,339.25 be dismissed. It is further stipulated *537 that each party is to bear its own costs.'"
See 533 So.2d at 192. I wrote in Spence:
"I believe that parties in a civil case should be allowed to settle their case and have the appeal dismissed. In 5 C.J.S. Appeal and Error, § 1354(5) (1958), the following is stated:
"`A valid settlement by the parties of all their rights and differences pending the appeal requires dismissal.
"`When it appears that there has been a valid settlement or adjustment by the parties of all their rights and differences respecting the subject matter of the controversy, the appeal will be dismissed, even after the cause has been argued and submitted, or a decision has been rendered by the reviewing court but the case is still pending on a motion for rehearing, or after a hearing has been ordered, or even though appellant was induced by fraud to settle the litigation, where he fails to return, or to offer to return, the consideration. It is otherwise, however, if the payment does not settle all the matters involved in the appeal; or where the matter in dispute is settled only as to one or more of several appellants, or appellees; or if the real subject of the litigation has not been settled; or if the settlement itself is in controversy. So, also, the settlement of the main action after an order, in an ancillary proceeding, refusing to vacate an attachment sued out in the action and levied on, does not deprive appellant of the right to review such order of refusal.
"`Where, after judgment, plaintiff has assigned an undivided interest therein to another, and thereafter compromised with defendant without the assignee's consent, such compromise does not warrant dismissal of an appeal as the case is not moot, at least as to the assigned interest in the judgment.
"`It is the duty of both parties to notify the court of the settlement, but failure to comply with court rules relative to settlements will not necessarily affect the validity of a settlement so as to prevent it from rendering the questions moot.'
"The same principle of law is stated by Judge Bricken in Caldwell v. Loveless, 17 Ala.App. 381, 85 So. 307 (1920):
"`Since the submission of this appeal in this court it has, without dispute, been affirmatively made known to the court that the matters involved in the original proceedings have been amicably adjusted and fully settled between the parties, and that the present status is such that neither the appellant, defendant in the court below, nor the appellee, plaintiff in the court below, now have any interest in the matters involved; that the interests and claims of both parties to this action have been purchased by another, not a party here or in the court below; that all the costs of the proceedings here and in the court below have been settled, and that there now remain no questions to be settled between these parties, and hence a decision of the case would be of no value; that said cause has become moot before this court.
"`The necessary requisite to appellate jurisdiction is the existence of an actual controversy; therefore it is not within the province of this court to decide abstract or hypothetical questions, which are disconnected from the gravity of actual relief, or from the determination of which no practical result can follow. Nor is it the province of this court to consider a fictitious case, submitted merely for the purpose of testing the right to do a particular thing.
"`The general rule is, if pending an appeal, an event occurs which renders it impossible for the appellate court to grant any relief, the appeal may be *538 dismissed. There are many instances in which such condition may arise. It may arise by the act of the appellant himself. Woodruff v. Austin, 16 Misc. Rep. 543, 38 N.Y.S. 787, or it may likewise arise by the act of the appellee, as where, pending the appeal, he does, or relinquishes the right to do, some act in respect to which the appeal was taken. Wallingford v. Benson, 17 S.C. 591; Foote v. Smith, 8 Wyo. 510, 58 Pac. 898; 2 Cent.Dig. Appeal and Error, § 70 et seq. The condition may also arise from the act of the court a quo, that is to say, from some order or judgment in the case pending the appeal, which is made by the court, which renders the determination of the questions presented by the appeal unnecessary. Paris Electric Light Co. v. Martin (Tex.Civ. App.) 31 S.W. 243; 2 Cent.Dig. supra. Similarly it arises where a litigation has ceased to be between parties having adverse interests, etc. It has also been held, where all substantial interest in the controversy has been parted with or extinguished, the court will not hear the appeal merely to determine the rights to costs. Randolph v. Rosser, 7 Port. 249.
"`The present status of this proceeding, as made known to the court, necessitates a denial of the petition for mandamus, and a dismissal of the appeal at the cost of appellant.'
"17 Ala.App. at 382, 85 So. at 307."
533 So.2d at 192-93.
Several cases from other jurisdictions stand for the same proposition. See Rothenberg v. Connecticut Mut. Life Ins. Co., 161 So.2d 875 (Fla.Dist.Ct.App.1964) (settlement after issuance of opinion but before expiration of time for filing petition for rehearing); Payne v. Georgia Power Co., 223 Ga. 273, 154 S.E.2d 440 (1967) (settlement pending appeal from grant of interlocutory injunction); McKenzie v. Chastain, 181 Ga. 807, 184 S.E. 276 (1936) (settlement pending decision on motion for rehearing); United Services Automobile Ass'n v. Lederle, 400 S.W.2d 749 (Tex. 1966) (settlement pending appeal from judgment holding insurer liable); Wahpeton Public School Dist. No. 37 v. North Dakota Educ. Ass'n, 166 N.W.2d 389 (N.D. 1969) (settlement pending appeal from grant of temporary restraining order).
In light of the above, I must respectfully dissent.
HOOPER, C.J., and BROWN, J., concur.
NOTES
[1] The Hoppers refer to the Society's practice of persuading insureds to replace existing policies with less valuable new policies as "churning."
[2] The FAA addresses the enforcement of an agreement to arbitrate and the procedure to be followed once an agreement to arbitrate is found to exist. Section 4 of the FAA lays out the requirements once a trial court "[is] satisfied that the making of the agreement for arbitration ... is not in issue." However, the term "agreement in writing" is defined in a later section of the FAA, addressing the enforcement of foreign arbitral awards, as including "an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." Convention on the Recognition and Enforcement of Foreign Arbitral Awards, Art. II, § 2 (June 10, 1958) (see Historical and Statutory Notes to 9 U.S.C. § 201).
[3] Section 11 of the Constitution of Alabama provides, "[T]he right of trial by jury shall remain inviolate." This right has existed since Magna Charta and, in Alabama, all three branches of government, including the judicial branch, are restricted "from ever burdening, disturbing, qualifying, or tampering" with it. Alford v. State ex rel. Attorney General, 170 Ala. 178, 213, 54 So. 213, 223 (1910).
[4] Under Alabama law, amendments to the articles of incorporation, the constitution, or the laws of a domestic fraternal benefit society go into effect when they are approved by the commissioner of the Alabama Department of Insurance. § 27-34-17(b), Ala.Code 1975. However, foreign fraternal benefit societies are required to file their amendments with the commissioner within 90 days after the amendments are enacted. § 27-34-17(d), Ala. Code 1975.